UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------X
ELVA LUZ HOLGADO

                                  **VERIFIED COMPLAINT**

                  PLAINTIFF,

                                No:     2:21-cv-5288

        -against-

                                  **Jury Trial Demanded**

D&S CLEANERS INC. D/B/A
AMERICAN DRY CLEANERS & NU-CLEAR CLEANERS
AMERICAN GARMENT RESTORATION,
PAK CLEANERS, INC. D/B/A AMERICAN DRY CLEANERS
DANIEL KUCHLIK, LISA KUCHLIK & DANIEL BRAND

                  DEFENDANTS.

----------------------------------------------------------------------------X

       PLAINTIFF, ELVA LUZ HOLGADO ("PLAINTIFF" or "MS. HOLGADO"), by and through her undersigned counsel, PERVEZ & REHMAN, P.C., as for her complaint against DEFENDANTS D&S CLEANERS, INC. d/b/a AMERICAN DRY CLEANERS & NU-CLEAR CLEANERS,  AMERICAN GARMENT RESTORATION, PAK CLEANERS, INC. d/b/a AMERICAN DRY CLEANING, (collectively "CORPORATE DEFENDANTS") DANIEL KUCHLIK, LISA KUCHLIK & DANIEL BRAND (collectively "INDIVIDUAL DEFENDANTS") hereby alleges as follows:

## PRELIMNARY STATEMENT

1. This is a civil action for claims of sex-based discrimination, retaliation and unlawful employment practices and to provide appropriate relief to PLAINTIFF, who was adversely affected by these actions.  The PLAINTIFF's claims herein arise under Title

VII of the Civil Rights Act of 1964, the New York State Human Rights Law, N.Y. Exec. L. § 296 et seq., (hereinafter "New York State Human Rights Law" or "NYSHRL"), Intentional Infliction of Emotional Distress, Negligent Hiring and Supervision, Constructive Discharge.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over Title VII claims under 28 U.S.C. § 1331 and 1343 because they arise under the laws of the United States and are brought to recover damages for violations of civil rights.

3. This Court has supplemental subject matter jurisdiction over the State claims under 28 U.S.C. §1367 because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this judicial district under 28 U.S.C. §1392(b)-(c) and 42 U.S.C. §2000e-5(f)(3) because the Defendants conduct business and can be found in this district; a substantial part of the events and omission giving rise to the claims alleged herein occurred in this district; the alleged unlawful employment practices were committed here, and employment records relevant to the practice are maintained and administered here.

## ADMINISTRATIVE PREREQUISITES

5. The PLAINTIFF has satisfied all administrative prerequisites to commencing this action.

6. MS. HOLGADO filed her charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") on January 14, 2021.

7. The EEOC issued a right to sue letter for MS. HOLGADO dated September 2, 2021, which was received on September 2, 2021.

## PARTIES

8. At all times relevant to this action, MS. HOLGADO is a female who resided in the Suffolk County, State of New York.

9. At all times relevant to this action, DEFENDANT, D&S CLEANERS INC, d/b/a AMERICAN DRY CLEANERS & NU-CLEAR CLEANERS,  ("D&S') is a domestic corporation engaged in business in State of New York with a principal place of business at 1928 Jericho Turnpike, Huntington New York 11731.

10. At all relevant times to this action, AMERICAN GARMENT RESTORATION, ("AGR") is a domestic corporation engaged in business in the State of New York and according to its website, "American Garment Restoration (AGR) is a sister company of American Dry Cleaners, a family run business, who has been proudly serving both Nassau and Suffolk counties since 1964." Further, the website states, "American Garment Restoration is a spin-off of the AmericanDryCleaners.com company." Upon information and belief, AGR has a  principal place of business at 37 Werman Court, Plainview New York.

11. At all relevant times to this action, DEFENDANT PAK CLEANERS, INC. ("PAK CLEANERS") aka AMERICAN DRY CLEANERS is a domestic corporation engaged in business in the State of New York and shares common management, operations and is the same business as D&S and has a principal place of business at 418 South Oyster Bay Road, Hicksville NY 11801.

12. At all times relevant to this action, DEFENDANT, DANIEL KUCKLIK ("MR. KUCHLIK") is a manager, owner and/or operator of CORPORATE DEFENDANTS.

13. At all times relevant to this action, DEFENDANT, LISA KUCKLIK ("MRS. KUCHLIK") is a manager, owner and/or operator of CORPORATE DEFENDANTS

14. At all times relevant to this action, DEFENDANT, DANIEL BRAND ("MR. BRAND") is a manager of CORPORATE DEFENDANTS.

15. At all relevant times to this action, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS employed PLAINTIFF.

16. At all relevant times to this action, INDIVIDUAL DEFENDANTS had the right to hire, fire, set schedules, set pay rates, alter the working conditions, discipline, and direct PLAINTIFF'S work.

17. At all relevant times to this action, PLAINTIFF was paid with corporate checks from "D&S Cleaners" or "D&S Cleaners Inc. d/b/a Nu-Clear Cleaners."

18. At the end of 2020, PLAINTIFF was provided with a W-2 from PAK CLEANERS INC. with an address of 418 S. Oyster Bay Road, Hicksville, NY 11801.

19. Upon information and belief, despite having two separate corporate names, PAK CLEANERS INC. and D&S CLEANERS INC. are the same business.

## FACTUAL ALLEGATIONS

### *Plaintiff's Employment*

20. At all relevant times herein, CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS (collectively "DEFENDANTS") are employers within the meaning of all relevant statutes.

21. PLAINTIFF was a hard-working and dedicated employee who was employed by

CORPORATE DEFENDANTS for over twenty years until about December 2020 when she was constructively discharged, after given an ultimatum to return to work or lose her job.

22. At all times relevant herein, PLAINTIFF was employed by all DEFENDANTS to work at a storefront dry cleaning retail location where she was responsible for taking care of customers and processing incoming dry cleaning, among other duties.

23. PLAINTIFF was initially hired to work at the retail location of AMERICAN DRY CLEANERS a.k.a D&S CLEANERS Inc located in the Elwood Shopping Center, 1928 Jericho Turnpike, East Northport New York.

24. AMERICAN DRY CLEANERS had a second location in Hicksville where PLAINTIFF occasionally worked.

25. During most of MS. HOLGADO'S employment, she was supervised by non-party Peter Kuchlik who passed away in April 2020.

26. After Peter Kuchlik passed away, his son MR. KUCHLIK, took over day-to-day operations primarily out of D&S's second location located at 418 S. Oyster Bay Road, Hicksville NY 11801.

27. Upon information and belief, MRS. KUCHLIK was co-owner prior to Peter Kuchlik's passing and became an owner after he passed.

28. MR. BRAND was also MS. HOLGADO'S supervisor and was hired, upon information and belief, after Peter Kuchlik's passing.

29. At all times relevant herein, MR. KUCHLIK and MR. BRAND supervised PLAINTIFF on a day-to-day basis, controlled her work, assigned task/duties and monitored her performance with regard to her employment with the DEFENDANTS.

30. At all times relevant herein, all INDIVIDUAL DEFENDANTS had authority to hire, promote, demote, terminate, and/or alter the conditions of PLAINTIFF's employment with the DEFENDANTS.

31. At all times relevant herein, PLAINTIFF had performed her duties and obligations in a satisfactory manner.

32. At all times relevant herein, PLAINTIFF had not received any negative evaluations and/or poor performance reviews.

### *Plaintiff is Subjected to Sexual Harassment*

33. In or around October 2020, after working for CORPORATE DEFENDANTS for over two decades, MR. BRAND began a course of sexually harassing PLAINTIFF with unwelcome sexual comments, advances, and propositions to sleep in the same hotel room.

34. MR. BRAND began sending PLAINTIFF messages about meeting at the workplace and outside of the workplace for the purposes of harassing her and making inappropriate and unwelcome sexual advances.

35. These statements and unwelcome acts made PLAINTIFF uncomfortable, and PLAINTIFF made her discomfort known to MR. BRAND.

36. At all times relevant herein, PLAINTIFF did not submit to MR. BRAND's sexual advances.

37. PLAINTIFF attempted to complain about MR. BRAND's behavior to MR. KUCHLIK.

38. More specifically, on or about October 14, 2020, PLAINTIFF asked MR. BRAND, her immediate supervisor, to convey a message to MR. KUCHLIK that she needed to discuss something with him, including a request for time off.

39. MR. BRAND advised PLAINTIFF that MR. KUCHLIK was unavailable, and that PLAINTIFF could speak directly to him, instead.

40. MR. BRAND directed PLAINTIFF to come to the Hicksville location of ADC, to his office, after PLAINTIFF's shift at ADC in East Northport ended.

41. When PLAINTIFF arrived at the Hicksville location, MR. BRAND asked PLAINTIFF to come behind the counter, close to his office door, and then asked what she wanted to discuss with MR. KUCHLICK.

42. At that time, PLAINTIFF and MR. BRAND were alone.

43. Overcome with emotions, PLAINTIFF confided in MR. BRAND that she was having personal problems at home and needed some time off. During this conversation, PLAINTIFF began to cry.

44. In response, MR. BRAND walked up to PLAINTIFF and without permission touched her hair, repeatedly kissed her head and rubbed her shoulders.

45. PLAINTIFF became very uncomfortable and did not know what to do.

46. PLAINTIFF tried to move away from MR. BRAND but felt like she was unable to move.

47. Around 6pm, while MR. BRAND was touching PLAINTIFF, the driver for ADC, non-party Ricardo Laos ("Ricardo") walked in from the back door.

48. When Mr. BRAND saw Ricardo, he took a step back.

49. Ricardo and PLAINTIFF discussed the incident later and Ricardo advised PLAINTIFF to not discuss personal problems at work and commented that he too felt uncomfortable with what he witnessed.

50. PLAINTIFF was confused, scared and embarrassed by the harassment she experienced.

51. PLAINTIFF felt that MR. BRAND took advantage of PLAINTIFF and her vulnerability.

52. After leaving the Hicksville location, PLAINTIFF sat in her car and cried about the harassment she experienced by her supervisor.

53. Before leaving Hicksville, MR. BRAND told PLAINTIFF to come back the next day from 9am-2pm.

54. MR. BRAND also offered to increase PLAINTIFF's pay by sixty (60) dollars per week.

55. The next day, MR. BRAND called PLAINTIFF and reported that he had a solution for her family problems.

56. While PLAINTIFF needed to take time off from work and was eager to hear what solutions MR. BRAND could offer, PLAINTIFF did not want to meet with MR. BRAND alone and asked again to speak with MR. KUCHLIK.

57. MR. BRAND again advised that he would be handling the situation and asked PLAINTIFF to come back to his office in Hicksville.

58. PLAINTIFF was scared and uncomfortable, so she refused his request to meet in person.

59. In the following days, MR. BRAND reached out PLAINTIFF on numerous occasions to ask how PLAINTIFF was doing.

60. PLAINTIFF was very emotional and confided that her marriage was over and she needed to find a new place to live.

61. MR. BRAND kept telling PLAINTIFF that he would make "arrangements" and wanted to help her.

62. On Saturday, October 24, 2020, MR. BRAND called PLAINTIFF and asked her to meet him again at the Hicksville location of ADC.

63. PLAINTIFF declined because she did not feel comfortable seeing MR. BRAND in person, she did not feel good about their last personal interaction and didn't want to be far from her regular work location.

64. MR. BRAND offered to come to ADC in East Northport, but PLAINTIFF did not want to be in the store alone with him.

65. Instead, PLAINTIFF suggested they meet the next day at the diner in East Northport (just down the road from the ADC East Northport location) because it was in a public place.

66. On Sunday October 25, 2020, MR. BRAND and PLAINTIFF met at the diner.

67. During this meeting, MR. BRAND told PLAINTIFF that he would talk to MR. KUCHLIK and get approval for PLAINTIFF to take a two-week vacation so she could go to Peru to visit her family.

68. MR. BRAND advised PLAINTIFF that she could apply for unemployment while on vacation and offered to pay one week of it.

69. PLAINTIFF kept asking MR. BRAND if he had MR. KUCKLIK's authorization to make these promises, and MR. BRAND advised PLAINTIFF that she did not have to worry about MR. KUCKLIK.

70. After eating in the diner, PLAINTIFF and MR. BRAND walked to the parking lot and MR. BRAND asked PLAINTIFF to get in his car.

71. PLAINTIFF was very hesitant, but MR. BRAND kept insisting he needed to talk about PLAINTIFF's vacation and about the new work arrangements.

72. MR. BRAND also told PLAINTIFF that he needed to show her something.

73. When PLAINTIFF was in MR. BRAND's car, MR., BRAND brought up PLAINTIFF'S home situation which stirred up emotions in PLAINTIFF causing her to cry.

74. PLAINTIFF was not looking to discuss her personal problems with MR. BRAND again but he raised the topic.

75. MR. BRAND moved in closer and started kissing PLAINTIFF and touching her face without her consent.

76. MR. BRAND then started to drive his car with PLAINTIFF still in the vehicle and said he wanted to show her something.

77. PLAINTIFF was frightened, hesitant and very reluctant to travel in the car with MR. BRAND but felt trapped in the vehicle.

78. MR. BRAND drove PLAINTIFF to a hotel and asked PLAINTIFF to come inside with him, promising that she could stay at the hotel.

79. PLAINTIFF did not want to go to a hotel with MR. BRAND and instead asked him to take her back to the diner parking lot.

80. MR. BRAND drove back and  before PLAINTIFF got out of the car, MR. BRAND began kissing her head and touching her face without her consent.

81. Then MR. BRAND brazenly kissed PLAINTIFF on the mouth and started to lick her tears.

82. PLAINTIFF felt disgusted and violated.

83. MR. BRAND was clearly offering to help PLAINTIFF get time off in exchange for sexual favors in a classic quid pro quo scenario.

84. MR. BRAND was in a position of authority.

85. PLAINTIFF rebuked all his advances.

86. PLAINTIFF fled from MR. BRAND'S car and left the parking lot in tears.

87. The next day, Monday October 26, 2020, MR. BRAND came to the East Northport store, unannounced while PLAINTIFF was working alone.

88. He insisted again that PLAINTIFF stay in a hotel for two weeks and that he already made the arrangements.

89. MR. BRAND  touched PLAINTIFF without permission again, touching her hair and neck, stroking her hair and pulling her close to him.

90. PLAINTIFF was very scared and uncomfortable and pushed him away.

91. PLAINTIFF'S co-worker, non-party Perla Martinez ("Perla"), thankfully walked into the store at that moment.

92. MR. BRAND then directed PLAINTIFF to come into the back office so they could be alone.

93. Once in the office, MR. BRAND called someone at Hilton Garden Inn in Westbury and made arrangements for PLAINTIFF to stay there at a rate of $1000 for the week.

94. PLAINTIFF told him again that she did not want to go there, and MR. BRAND became more and more persistent.

95. MR. BRAND insisted and told PLAINTIFF he would help her move her belongings there.

96. MR. BRAND would not take no for an answer, so PLAINTIFF stopped protesting.

97. After MR. BRAND left the store, PLAINTIFF called him to again refuse the hotel offer.

98. Mr. BRAND became angry and began to raise his voice at PLAINTIFF and said he would stay with her to keep her safe.

99. The more PLAINTIFF refused, the angrier he became.

100.    At one point, PLAINTIFF put MR. BRAND on speaker phone so that her co-worker could hear him argue with her.

101.    When PLAINTIFF got home, she told her husband what had happened.

102.    The next day, PLAINTIFF'S husband called ADC and asked to speak to MR. KUCHLIK, but MR. BRAND picked up the phone.  PLAINTIFF'S husband told MR. BRAND that he was calling to complain about sexual harassment on behalf of his wife.

103.     PLAINTIFF'S husband did not realize that he was talking to the actual harasser, MR. BRAND.

104.     PLAINTIFF tried to call MR. KUCHLIK the next day, but again, MR. KUCHLIK was not available and did not call PLAINTIFF back.

105.     A few days later, MR. KUCHLIK finally called PLAINTIFF back after several pleas from PLAINTIFF to contact her and not tell MR. BRAND that he was reaching out.

106.     PLAINTIFF told MR. KUCKLIK everything that happened between her and MR. BRAND, his improper touching, harassment, and insistence that she stay in a hotel with him.

107.     Initially, PLAINTIFF believed that MR. KUCKLIK took her complaints seriously even though he took about two weeks to call her back. However, PLAINTIFF was mistaken.

108.     Upon information and belief, MR. KUCHLIK, on behalf of CORPORATE DEFENDANTS, did not fire MR. BRAND.

109.     Even though PLAINTIFF complained about unlawful conduct at the workplace, no investigation took place.

110.     PLAINTIFF was not notified of any resolution, and the harasser continues to work at ADC.

111.     PLAINTIFF has been seeking therapy for the trauma she experienced, and her therapist advised she take some time off before returning to work.

112.     PLAINTIFF has worked at ADC for almost her whole adult life but could not bear to return to her unsafe working conditions while MR. BRAND was free to do what he pleased.

113.     PLAINTIFF told MR. KUCHLIK that she was in therapy and needed to take some time off.

114.     DEFENDANTS did not offer PLAINTIFF any leave options including FMLA leave, Paid Family Leave or New York Paid Sick Leave or short-term disability.

115.     DEFENDANTS did not engage in a dialogue about a reasonable accommodation.

116.     Instead, DEFENDANTS wrote a letter on December 8, 2020, which said, "if you are unable to return to work immediately, we will deem your absence as job abandonment, and you will be removed from payroll."

117.     DEFENDANTS failed to take PLAINTIFF's complaints of sexual harassment seriously and swept them under the rug.

118.     DEFENDANTS did this despite a medical note from PLAINTIFF'S therapist.

119.     DEFENDANTS retaliated against PLAINTIFF for making a complaint by effectively terminating PLAINTIFF and not discussing any leave options.

120.      After DEFENDANTS, through MR. KUCHLIK, were made aware of PLAINTIFF'S complaints, they took no corrective actions, did not investigate PLAINTIFF's complaints, but rather continued to pressure PLAINTIFF to return to work without assuring her workplace safety.

121.      MR. KUCHLIK did not offer PLAINTIFF any time off under Paid Family Leave or provide her with formal sick leave or discuss any reasonable accommodations with PLAINTIFF.

122.      PLAINTIFF suffered numerous physical, mental, and emotional ailments due to DEFENDANTS' behavior.

123.      PLAINTIFF is still in treatment.

*Plaintiff's Constructive Discharge*

124.     MR. BRAND'S actions became so unbearable to PLAINTIFF, in December

2020, when faced with an ultimatum to return to work or be fired, PLAINTIFF felt she

had no choice in the matter and could not report to work as directed by MR. KUCHLIK's

ultimatum.

125.     Further, DEFENDANT, including MR. KUCHLIK, provided PLAINTIFF no

assurance that he would be able to provide a safe work environment for her.

126.     DEFEDNANTS, including MR. KUCHLIK, simply pretended that nothing

happened to PLAINTIFF.

127.     Essentially, DEFENDANTS gave PLAINTIFF an retaliatory ultimatum – go

back to work under the same conditions you complained of, or lose your job.

128.     DEFENDANT'S knowingly and willfully put their bottom line over their

obligation to provide PLAINTIFF a safe and harassment-free workplace.

**Further Harassment by Defendants through Samantha Kuchlik**

129.     In or around February 2021, PLAINTIFF received a voicemail from non-party

Samantha Kuchlik, ("Samantha") daughter of Peter Kuchlik.

130.     In this voicemail, Samantha expressed her disbelief and shock that PLAINTIFF

would tarnish her father's memory and put her family through the ordeal of defending the

claims PLAINTIFF had against them, including her complaints of sexual harassment.

131.     Samantha coldly accused PLAINTIFF of taking advantage of the "kindness"

Peter Kuchlik demonstrated to her as an employee.

132.     Samantha falsely, brazenly and improperly accused PLAINTIFF of stealing

money from DEFENDANTS.

133.     In reference to PLAINITFF's sexual harassment complaints, Samantha stated that if MR. BRAND "came at" PLAINTIFF, it was entirely his fault and not the responsibility of the remaining DEFENDANTS.

134.     Samantha used emotional blackmail to belittle, demean, and further harass PLAINTIFF who was already suffering severe emotional distress and seeking treatment.

135.     Samantha repeatedly told PLAINTIFF how disappointed she was that PLAINTIFF was asserting her rights and demanding justice from DEFENDANTS, equating PLAINTIFF's good faith complaints to a personal attack on Samantha's family.

136.     Samantha's message was cold, mean-spirited, self-centered, and made clear that DEFENDANTS disregarded PLAINTIFF's claims entirely and were actively trying to intimidate, humiliate, and discourage PLAINTIFF from asserting her lawful rights.

137.     PLAINTIFF cried uncontrollably when she heard the hostile, insensitive, demeaning, and threatening message Samantha left on PLAINTIFF's personal cell phone.

*Summary*

138.     DEFENDANTS  created a severe and pervasive hostile work environment.

139.     PLAINTIFF was retaliated against for no reason other than PLAINTIFF having declined the *sexual* advances of MR. BRAND and for having complained of *sexual harassment*.

140.     By and through the course of conduct herein described, DEFENDANTS intentionally discriminated against PLAINTIFF denying her equal terms and conditions of employment and creating a hostile work environment.

141.     At all times relevant herein, DEFENDANTS treated PLAINTIFF differently than

other similarly situated employees that did not make a sexual harassment complaint.

142.     At all times relevant herein, DEFENDANTS treated PLAINTIFF different because she was a female.

143.     At all times relevant herein, DEFENDANTS condoned and acquiesced in the discrimination and sexual harassment by failing to investigate, retaliating against the PLAINTIFF, and terminating her employment with an ultimatum thereby becoming a party to the discriminatory and retaliatory acts/actions and the unlawful conduct.

144.     At all times relevant herein, DEFENDANTS created an unlawful hostile work environment for the PLAINTIFF.

145.     At all times relevant herein, DEFENDANTS perpetuated quid pro quo sexual harassment.

146.     At all times relevant herein, DEFENDANTS' acts, actions, and conduct were intentional, malicious, and/or intended to harm the PLAINTIFF.

147.     At all times relevant herein, PLAINTIFF's employment became intolerable as a result of the discrimination to which she was subjected to by the DEFENDANTS that no reasonable person in PLAINTIFF's position should be subjected to such acts.

148.     As a result of the foregoing, PLAINTIFF has suffered and will continue to suffer loss of income, loss of a salary, bonuses, benefits, promotions, promotional opportunities, other compensation and benefits to which such employment entails together with future pecuniary losses; in addition, the PLAINTIFF has suffered and will continue to suffer psychological, mental and emotional pain, humiliation, mental anguish, emotional distress, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

149.     As a result of the foregoing, PLAINTIFF has further experienced severe

emotional and mental distress with physical ailments that have become persistent.

150.      As a further direct and proximate result of said unlawful employment practices, PLAINTIFF has suffered the indignity of discrimination and retaliation, the invasion of her rights to be free from discrimination and retaliation, and great humiliation, which has manifested in emotional distress and physical illness.

## AS A FIRST CAUSE OF ACTION

### Title VII- Sexual Harassment

151.      PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

152.      The DEFENDANTS intentionally discriminated against PLAINTIFF by creating and maintaining a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §2000e et seq.

153.      The sexually hostile work environment created by the DEFENDANTS was severe, pervasive, and part of a pattern or practice of harassment against PLAINTIFF.

154.      The hostile work environment altered the PLAINTIFF's conditions of employment by creating an abusive, physically threatening, humiliating, and intolerable working environment.

155.      PLAINTIFF made numerous attempts to complain about the sexual harassment and quid pro quo propositions she was subjected to, but DEFENANTS took no action to stop the sex-based, offensive, unwelcomed, unsolicited, and illegal behavior directed towards PLAINTFF.

156.      For weeks, MR. KUCHLIK, in particular, refused to return PLAINTIFF's phone calls or provide PLAINTIFF with an alternative method to complain.

157.     The CORPORATE DEFENDANTS, through and together with the

INDIVIDUAL DEFENDANTS participated in the conduct giving rise to the harassment

and hostile work environment that altered the terms and conditions of PLAINTIFF's

employment.

158.     As a direct and proximate consequence of the DEFENDANTS' intentional,

unlawful, discriminatory treatment of PLAINTIFF, she has suffered and continues to

suffer damages including, but not limited to, compensatory damages due to emotional

distress and mental anguish.

159.     By reason of the sexual harassment perpetuated by the DEFENDANTS, the

PLAINTIFF is entitled to all damages available to her under Title VII.

## AS A SECOND CAUSE OF ACTION

### New York State Human Rights Law – Sexual Harassment

160.     PLAINTIFF repeats, reiterates and realleges each and every allegation set forth

above with the same force and effect as though fully set forth herein.

161.      NYSHRL (Executive Law § 296) provides that it shall be an unlawful

discriminatory practice: (a) For an employer or licensing agency, because of the age, race,

creed, color, national origin, sexual orientation, military status, sex, disability, genetic

predisposition or carrier status, or marital status of any individual, to refuse to hire or

employ or to bar or to discharge from employment such individual or to discriminate

against such individual in compensation or in terms, conditions or privileges of

employment.

162.     DEFENDANTS engaged in an unlawful discriminatory practice in violation of

NYSHRL (Executive Law § 296) by actively and constructively taking adverse

employment actions, creating and maintaining a sexually hostile work environment and discriminatory working conditions, and otherwise discriminating against the PLAINTIFF because of her sex and gender.

163.     DEFENDANTS engaged in an unlawful discriminatory practice by taking adverse employment actions and otherwise discriminating against the PLAINTIFF by engaging in quid pro quo sexual harassment.

164.     The hostile work environment created by DEFENDANTS was severe and pervasive.

165.     The hostile work environment altered the PLAINTIFFS' conditions of employment by creating an abusive, threatening, humiliating, and intolerable working environment.

166.     PLAINTIFF complained about the sexual harassment she was subjected to, objected to, and removed herself from the abusive environment she found herself in.

167.     DEFENDANTS took no action to stop the sex-based, offensive, unwelcomed, unsolicited, and illegal behavior that was directed towards PLAINTIFF.

168.     INDIVIDUAL DEFENDANTS has the power to hire, fire, and alter the terms and working conditions of PLAINTIFF' employment.

169.     The CORPORTATE DEFENDANTS, through and together with the INDIVIDUAL DEFENANTS, altered the terms and conditions of PLAINTIFF's employment.

170.     DEFENDANTS failed to promptly investigate or take appropriate remedial measures despite being informed about the existence of discriminatory conduct.

171.     DEFENDANTS, through their agent Samantha, called PLAINTIFF and tried to humiliate her, shame her, and blame her for standing up for her rights. Further

DEFEDNANTS, though their agent Samantha, claim that they are not responsible for MR. BRAND's sexual harassment but notably do not deny the harassment took place.

172.     That as a direct result of the foregoing, the PLAINTIFF is entitled to all damages available to them under New York State Human Rights Law.

## AND AS A THIRD CAUSE OF ACTION

### Title VII – Retaliation

173.     PLAINTIFF repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as fully set forth herein.

174.     PLAINTIFF complained about the sexually hostile working environment to which she was subjected to.

175.     DEFENDANTS retaliated against PLAINTIFF for engaging in protected activity of reporting and opposing the sexually hostile work environment to which she was being subjected to.

176.     DEFENDANTS gave PLAINTIFF an ultimatum to return to work, without a proper investigation or ensuring that her complaints were addressed and that she would be afforded a safe work environment.   DEFENDANTS threatened to terminate her employment if she did show up to work, despite the fact that she was seeking medical treatment.

177.     DEFENDANTS, through their agent Samantha, tried to emotionally blackmail PLAINTIFF into dropping her claims through a highly charged and emotional voicemail that was humiliating and accusatory and could have deterred a reasonable person from complaining.

178.     As a direct and proximate consequence of the DEFENDANTS' intentional, unlawful, discriminatory and retaliatory treatment of PLAINTIFF, MS. HOLGADO, has suffered and continues to suffer damages, including but not limited to, compensatory damages due to emotional distress and mental anguish.

179.     PLAINTIFF is entitled to damages available under Title VII for the retaliation she endured.

## AND AS A FOURTH CAUSE OF ACTION

### New York State Human Rights Law - Retaliation

180.     PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

181.     PLAINTIFF complained about the sexually hostile working environment to which she was subjected to.

182.     DEFENDANTS engaged in an unlawful and retaliatory practice in violation of the NYSHRL by taking adverse employment action and otherwise discriminating and retaliating against the PLAINTIFF.

183.     DEFENDANTS gave PLAINTIFF an ultimatum to return to work, without a proper investigation or ensuring that her complaints were addressed and that she would be afforded a safe work environment.   DEFENDANTS threatened to terminate her employment if she did show up to work, despite the fact that she was seeking medical treatment.

184.     DEFENDANTS, through their agent Samantha, tried to emotionally blackmail PLAINTIFF into dropping her claims through a highly charged and emotional voicemail that was humiliating and accusatory, and would have reasonably deterred another person from engaging in protected activity.

185.     DEFENDANTS retaliated against PLAINTIFF for engaging in protected activities for reporting and opposing the sexually hostile working environment to which she was being subjected.

186.     In violation of New York Executive Law § 296, DEFENDANTS retaliated against the PLAINTIFF in a way that interfered with the terms and conditions of PLAINTIFF's employment.

187.     As a direct and proximate cause of DEFENDANTS' intentional, unlawful, discriminatory, and retaliatory treatment of PLAINTIFF, MS. HOLGADO, suffers and continues to suffer damages, including but not limited to, compensatory damages due to emotional distress and mental anguish.

188.     By reason of the retaliation perpetrated by DEFENDANTS, PLAINTIFF is entitled to all damages available to them under New York State Human Rights law.

## AND AS A FIFTH CAUSE OF ACTION FOR INTENTIONAL
### Infliction Of Emotional Distress

189.     PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein DEFENDANTS engaged in extreme and outrageous conduct.

190.      DEFENDANTS intended to cause, or disregarded a substantial probability of causing, severe emotional distress to PLAINTIFF.

191.      There exists a causal connection between the above conduct and said injury.

192.      As a result of said conduct PLAINTIFF suffered and suffers from severe emotional distress.

### AND AS A SIXTH CAUSE OF ACTION FOR INTENTIONAL
**Negligent Hiring, Supervision & Retention**

193.      PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as though fully set forth herein.

194.      As a result of DEFENDANTS gross negligence, PLAINTFF experienced, *inter alia,* sexual harassment, retaliation, physical harm, anxiety, and emotional distress.

195.      Had DEFENDANTS taken reasonable care in making decisions concerning hiring, supervision and retention of MR. BRAND, PLAINTIFF could have been spared the foreseeable harm she experienced.

196.      DEFENDANTS should have known or knew of MR. BRAND's improper behavior and should have afforded PLAINTIFF an opportunity to complain without being constantly and consistently ignored.

197.      As a direct and proximate result of the aforementioned conduct, perpetuated by DEFENDANTS, PLAINTFF was damaged and suffered physical and emotional harm, anguish, anxiety and humiliation that continues today.

198.      By reason of DEFENDANT's failure to exercise due care in hiring supervision, and retention of employees, PLAINTFF suffered sexual harassment and retaliation.

### AND AS A SEVENTH CAUSE OF ACTION

**Constructive Discharge**

199.     PLAINTFF repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though full set forth herein,

200.     PLAINTIFF was constructively discharged based on her sex when she was subjected to DEFENDANTS' sexual harassment and hostile working environment and retaliation, though MR. BRAND.

201.     Despite DEFENDANTS knowing that PLAINTIFF had complained and requested time off, MR. KUCHLIK demanded that PLAINTIFF return to work or else be terminated.

202.     The working conditions resulting from DEFENDANTS' sexual harassment/hostile working environment and retaliation were so intolerable that a reasonable person in the respective employee's situation, such as the PLAINTIFF, would have been compelled to resign.

203.     As a direct and proximate consequence of the DEFENDANTS' intentional, unlawful, discriminatory, and retaliatory treatment, which led to the constructive discharge of the PLAINTIFF, the PLAINTIFF has suffered and continues to suffer damages, including but not limited to, compensatory damages due to emotional distress and mental anguish.

204.     By reason of the retaliation perpetrated by DEFENDANTS, the PLAINTIFF is entitled to damages available under Title VII and New State Human Rights Law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, upon all of the facts, allegations, and causes of action as set forth and alleged herein, PLAINTIFF respectfully requests that this Court:

A. Grant judgment against DEFENDANTS as to each and every cause of action herein alleged;

B. Grant judgment against DEFENDANTS for engaged in unlawful employment practice prohibited by federal, state common law, Title VII, NYSHRL;

C. Grant judgment against DEFENDANTS for harassing, discriminating against, taking adverse employment actions, and retaliating against a PLAINTIFF on the basis of her sex and gender and for taking an adverse employment action against PLAINTIFF, and for retaliating against PLAINTIFF on the basis of her sex and gender and engaging in *quid pro quo* sexual harassment and hostile work environment;

D. Awarding damages to the PLAINTIFF for all lost wages and benefits resulting from DEFENDANTS' unlawful employment practices;

E. Awarding PLAINTIFF compensatory damages for mental and emotional distress, pain and suffering;

F. Awarding PLAINTIFF attorney's fees, costs, and expenses; and

G. Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just and proper to remedy the DEFENDANTS' unlawful employment practices.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues so triable.


Dated: Melville, New York
        September 23, 2021

                              Respectfully Submitted,

**Pervez & Rehman, P.C.**

Attorneys for PLAINTIFF

/s/ Nadia M. Pervez

By: Nadia M. Pervez, Esq.
    Aneeba Rehman, Esq.
    68  South Service Road, Suite 100
    Melville, NY 11747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------X

ELVA LUZ HOLGADO

<u>VERIFIED</u>
<u>COMPLAINT</u>

PLAINTIFF,

No:

-against-

<u>Jury Trial Demanded</u>

D&S Cleaners Inc. d/b/a
American Dry Cleaners & Nu-Clear Cleaners
American Garment Restoration,
Pak Cleaners, Inc. d/b/a American Dry Cleaners
Daniel Kuchlik, Lisa Kuchlik & Daniel Brand.

DEFENDANTS.

----------------------------------------------------------------------------X


**VERIFICATION**

STATE OF NEW YORK          )
                                              ss.:
COUNTY OF Suffolk          )

I, ELVA LUZ HOLGADO, am the Plaintiff in the within action for. I have read the foregoing
Complaint and know the contents thereof. The contents are true to my own knowledge except as
to matters therein stated to be alleged upon information and belief, and as to those matters I believe
them to be true.

_____
ELVA LUZ HOLGADO

Sworn to before me on this 20 day
of September, 2021.

_____
Notary Public

FLORENCE BLEICH
Notary Public – State of New York
NO. 01BL6369334
Qualified in Suffolk County
My Commission Expires Jan 9, 2022